David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Ste. 100
Santa Monica, CA 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB MEIER, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>POPEYES LOUISIANA KITCHEN, INC., a Minnesota corporation,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violation of the Telephone Consumer Protection Act (47 U.S.C. § 227, et seq.)**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff, Jacob Meier, brings this Class Action Complaint against Defendant, Popeyes Louisiana Kitchen, Inc. ("Popeyes"), to stop Defendant's practice of transmitting unauthorized text message calls to cellular telephones

Class Action Complaint

and to obtain redress for all persons injured by its conduct. Plaintiff, for his Class Action Complaint, alleges as follows based upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE CASE

1. In an effort to promote its fast-food restaurants, Defendant has engaged in an invasive and unlawful form of marketing: the transmission of unauthorized advertisements in the form of "text message" calls to the cellular telephones of consumers throughout the country.

2. By effectuating these unauthorized text message calls (hereinafter, "wireless spam" or "SMS Messages"), Defendant has violated consumers' statutory and privacy rights and has caused consumers actual harm, not only because consumers were subjected to the aggravation and invasion of privacy that necessarily accompanies wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam.

3. In order to redress these injuries, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings this suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), which prohibits unsolicited voice and text calls to cellular phones.

4. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all wireless spam activities and an award of statutory or actual damages to the members of the class, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

6. This Court has personal jurisdiction over Defendant, because Defendant does business in this District, is registered to do business in California and nationwide, and certain of the acts giving rise to the claims alleged herein were committed in California.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts business in this District and because a substantial part of the events concerning the conduct at issue occurred in this District as the text messages were received by Plaintiff in this District.

## PARTIES

8. Plaintiff Jacob Meier is a citizen and resident of the State of California.

9. Defendant Popeyes is a Minnesota corporation with its principal place of business located in Atlanta, Georgia. Defendant is a developer, operator, and franchisor of fast-food restaurants located across the country. Defendant markets its fast-food to thousands of consumers, including consumers in this District, through its franchised restaurants, television advertisements, on its website, and via text message marketing, and sells fast-food directly to consumers at its franchised restaurants, including restaurants located in this District.

## COMMON ALLEGATIONS OF FACT

10. In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have

1  increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

3     11.    One of the newer types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

8     12.    An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

12     13.    Unlike more conventional advertisements, SMS calls, and particularly wireless spam, invade consumers' privacy and can actually cost their recipients money, because cell phone users such as Plaintiff must pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

18     14.    Certain marketers use this new technology to create "mobile alerts," or recurring programs in which text messages are automatically sent *en masse* to persons within a subscribed database. The content and parameters of such programs are set by the content providers themselves and frequently appear in the initial text message sent. Recurring mobile alerts are subject to the TCPA and the same regulations promulgated by the FCC as other automated calls or text messages to cellular telephones.

25     15.    Beginning at least as early as 2009, and continuing to the present, Popeyes undertook a misguided effort to increase sales by causing the mass transmission of spam text message advertisements in the form of mobile alerts to

the cell phones of those whom it hoped were potential customers of its restaurants.

16. On or about January 21, 2015, Plaintiff responded to an advertisement by Defendant and enrolled in Defendant's mobile alert program by sending a text message containing the phrase "Love that chicken" to the short code "31286."

17. Shortly after sending the text message as described in Paragraph 16 above, Plaintiff's cell phone rang, indicating that a text message call was being received. The message Plaintiff received was an automated confirmatory text message from Defendant. The body of the text message read:

> If you're interested in receiving LOVETHATCHICKEN mobile alerts, please reply Y to join. Up to 2/month. Msg&data rates may apply. Reply HELP for help.
> Msg&data rates may apply

18. In the text message transmission that Plaintiff received, the "from" field was identified as "31286," which is an abbreviated telephone number known as an SMS short code operated by Defendant's agents. The use of an SMS short code by Defendant's agents enabled Defendant's mass transmission of wireless spam to lists of cellular telephone numbers.

19. Based on the representations made by Defendant in the text message identified in paragraph 17 above, including specifically the limitation on the number of monthly text messages to be sent by Defendant, Plaintiff replied to Defendant's text message with a text message stating "Y".

20. After responding to the text message identified in paragraph 17, Plaintiff began to receive monthly automated text messages from Defendant containing generic advertisements for various products and sales.

21. Defendant's confirmatory text message identified in paragraph 17 above explicitly states that subscribers would be sent no more than two (2) text

messages per month and is intended to induce consumers, including Plaintiff, to enroll in its automated messaging program.

22. However, Defendant sent at least three (3) text message advertisements to Plaintiff's cellular telephone during the month of April 2015. Specifically, Plaintiff received text messages by or on behalf of Defendant on April 7, April 14, and April 28. Each of these text messages was sent automatically and instantaneously by Defendant through the use of an automatic telephone dialing system from the short code 31286 and contained a generic non-personalized advertisement.

23. Because the initial opt-in message that Defendant sent to Plaintiff stated that he would receive no more than two (2) messages per month, any additional messages beyond the first two messages he received in any given month were unauthorized and sent without Plaintiff's consent in violation of the TCPA.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action on behalf of himself and a nationwide class (the "Class"), defined as follows: All persons in the United States and its Territories who, within four years prior to the commencement of this litigation, were sent more than two (2) text messages in a single month by or on behalf of Defendant to their cellular telephone, wherein said text messages were sent using an automatic telephone dialing system.

25. Upon information and belief, there are hundreds, if not thousands, of members of the Class such that joinder of all members is impracticable.

26. Common questions of law and fact exist as to all members of the Class, and such questions predominate over questions affecting Plaintiff or individual members of the Class. Common questions for the Class include, but are not limited, to the following:

      a.    Did Defendant and/or its agents send one or more unauthorized text message advertisements to members of the Class?

      b.    Did Defendant and/or its agents use an automatic telephone dialing system to transmit the text message advertisements at issue?

      c.    Did Defendant and/or its agents transmit text message advertisements to persons who did not provide Defendant with prior express consent to receive such messages?

      d.    Did Defendant and/or its agents transmit more than two (2) text messages in any single month to members of the Class?

      e.    Did Defendant and/or its agents transmit in any period of time more text messages than Defendant represented would be sent in that period of time?

      f.    Did the wireless spam distributed by Defendant violate the TCPA?

      g.    Are the members of the Class entitled to treble damages based on the willfulness of Defendant's conduct?

      h.    Should Defendant be enjoined from engaging in such conduct in the future?

27. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

28. Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class in distributing the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

29. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class as a result of Defendant's unlawful distribution of the wireless spam alleged herein.

30. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227, et seq.) on behalf of the Class**

31. Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

32. Defendant directed the placement of unauthorized commercial text message calls to a list of wireless telephone numbers of Plaintiff and the other members of the Class using equipment that had the capacity at the time the calls were placed to store or produce telephone numbers to be called using a random or sequential number generator and to automatically dial such numbers without human intervention.

Class Action Complaint

8

33. These generic text message calls were made *en masse* through the use of a short code without the prior express consent of Plaintiff and the Class.

34. Defendant has, therefore, violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

35. As a result of Defendant's illegal conduct, Plaintiff and the members of the Class have had their privacy rights violated, have suffered actual and statutory damages, and under Section 227(b)(3)(B) are each entitled to, *inter alia,* a minimum of $500.00 in damages for each such violation of the TCPA.

36. To the extent Defendant knew or should have known that the members of the Class did not provide prior express consent to be sent the wireless spam at issue, the Court should, pursuant to Section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully prays for the following relief:

A. An order certifying the Class as defined above;

B. An award of the greater of actual or statutory damages;

C. An injunction requiring Defendant to cease all wireless spam activities;

D. An award of reasonable attorneys' fees and costs; and

E. Such further and other relief the Court deems reasonable and just.

DATED: November 2, 2015          PARISI & HAVENS LLP

By: _____
David C. Parisi
Suzanne Havens Beckman

Class Action Complaint          9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Attorneys for Plaintiff Jacob Meier, individually and on behalf of a class of similarly situated individuals

---

Class Action Complaint

10

# JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

DATED: November 2, 2015         PARISI & HAVENS LLP

By:_____
David C. Parisi
Suzanne Havens Beckman
Attorneys for Plaintiff Jacob Meier, individually and on behalf of a class of similarly situated individuals